Okay, the case is taken under advisement. We'll move to argument number five of the morning, United States v. Phillip Robinson. It's appeal number 22-14-72. Mr. Freilich, when you're ready, good morning.  And may it please the court, my name is Matt Freilich and I represent the appellant in this case, Phillip Robinson. Mr. Robinson and his co-defendant, Jose Solorzano, were indicted on several charges after they were arrested at a busted drug sale. Although Mr. Solorzano eventually pleaded guilty to lesser charges, Mr. Robinson exercised his constitutional right to go to trial and to have a jury determine his guilt and innocence. Acting under that authority, the jury convicted Mr. Robinson of participating in a drug conspiracy and of being a felon in possession of a firearm. However, the jury expressly declined to authorize punishment for Mr. Robinson possessing the firearm in furtherance of the drug conspiracy. Despite the jury's acquittal on that count, however, the court at sentencing made contrary findings, thereby triggering a sentencing enhancement that increased Mr. Robinson's overall punishment by nearly half. Mr. Robinson respectfully requests that the court vacate the sentence and remand on the grounds that the sentence was unconstitutional. I want to acknowledge at the outset that this court's precedents have been against Mr. Robinson on this issue and that the court doesn't reconsider its own precedents lightly. However, the court has done so in past cases where there are compelling reasons, and we respectfully submit that there are two in this case. The first is a recent decision by the Michigan Supreme Court in People v. Beck, which adopted Mr. Robinson's ultimate position. And the second is the Supreme Court's own most recent word on the issue, which came in the 2013 decision of Eileen v. United States, and 2019 in Hayman v. United States. I want to turn first to People v. Beck because the reasoning that the Michigan Supreme Court supplied in that case clashes with the exact reasoning that this court has used in the past to authorize the practice of acquitted conduct sentencing. And that's the Supreme Court's decision in 1997 in United States v. Watts, which upheld a sentence that was based on acquitted conduct, but in doing so did not expressly address whether there was a Sixth Amendment objection or necessarily foreclosed that species of challenge. And the Michigan Supreme Court, in 2019, acting under a relatively recently adopted set of advisory guidelines similar to the federal guidelines in this case, and with the benefit of all of the Supreme Court's precedents on this issue, up to and including Hayman in 2019, concluded that Watts was not controlling on the question, finding relevant that Watts did not expressly foreclose a Sixth Amendment challenge. And there are other factors about Watts that also counsel against reading it that broadly. One was that Watts was decided on a summary disposition. It was decided on a petition for certiorari without the benefit of full briefing and oral argument, and was rejecting a specific approach that two lower Ninth Circuit panels took to acquitted conduct sentencing in that case, neither of which were explicitly based on the Sixth Amendment. And the Supreme Court's own precedents, for example, United States v. Booker in 2005, discussed Watts and characterized it as narrow and rejecting a sort of double jeopardy challenge to the practice of acquitted conduct sentencing. So Beck considered explicitly whether Watts was controlling on the question, concluded that it wasn't, and then went on to decide as a matter of federal constitutional law, not state constitutional law, that the practice of sentencing a defendant based on conduct for which the jury acquitted him can't be squared with the Supreme Court's own precedents in this area. I want to turn next to the U.S. Supreme Court's decision in United States v. Heyman, which is the most recent that it's had on the issue. And I think that case is relevant for two reasons. The first is that Heyman cast the jury trial right as applied to sentencing in stronger terms than it's ever been cast in prior cases. So the plurality, the way they phrased it and the passage that we cited in our brief said that the sentencing court's authority to punish is derived from and expressly limited by the jury's findings underlying the verdict. The second reason that Heyman is relevant is for its precise holding where the Supreme Court applied the principle of the jury trial right that was recognized in Apprendi for the first time to a supervised release revocation proceeding. And in doing so, it had to address an argument that was made in the dissent that temporally the supervision revocation proceeding was not a part of the criminal prosecution under the text of the Sixth Amendment. And the plurality and the concurring opinion in that case both rejected that argument and found that the jury's authority to either find innocence or find guilt applies throughout the duration of the criminal proceeding up to and in some cases including supervision. So if the Supreme Court has taken at its word about the significance of the jury's verdict and when it applies throughout a criminal proceeding, that perforce at least includes the sentencing hearing itself, which if a sentencing court could continue to recognize acquitted conduct in determining the sentence, that still would conflict with the jury's verdict of acquittal, which is still in force at that stage of the proceeding. So I appreciate... Do you think acquitted conduct is something that could be looked at under 3553A? Or is it your argument that it shouldn't be relevant to guideline calculation or 3553A? I think it could be recognized under 3553A, Your Honor. The point is that a sentencing guideline enhancement changes the exposure... Excuse me. Changes the defendant's overall exposure to punishment in a meaningful way. The exercising discretion under 3553A would not. There's certainly nothing in the text of 3553A itself that would preclude that. So it would be possible, I think, for the sentencing court to do that. But as other courts have noted, or other jurists on other courts have noted, the fact that there's a guideline enhancement is relevant because that has forced the framework for sentencing. If a judge issues a sentence that departs from the recommended guideline range, they still might be able to do that, but then that's subject to substantive reasonableness review and appeal. So there is a meaningful distinction. It can affect the standard of review. In a case where the guidelines are not binding on the court, but at least require it to calculate a range, and there are fixed consequences for specific degrees of or specific types of conduct, there is a constitutional problem there. If we move beyond the legal question here, what's the best you can do on the factual challenge that your client wants us to consider? Because it sure seems to me that he knew he was going to a drug deal, and he took a gun to the drug deal to protect the guy he was with from getting ripped off, either the money or the drugs, that way. I mean, it seems very clear that's exactly what was going on here, and that seems to be what the district court found. I understand that was the factual record, and I recognize the standard of review is deferential. However, the text message exchange that the district court was relying on was not quite as explicit as I think the government makes it seem. What about his own statement afterwards that he brought the gun for protection, given what had happened to his friend at the casino when he was robbed during a drug deal? That seems preponderance of the evidence. Right, and I recognize the standard is relatively permissive, and that statement is in the record. I think it is significant, but that's not part of what the district court relied on. It was focused primarily on the text message exchange. However, even that, other evidence from the record, I don't think supports the notion that Mr. Robinson on the specific day was bringing the gun for any reason actually associated with providing security. Yeah, the problem is he had that, there was a jury trial, right? And the whole business about, I thought I was going to a car sale or something, didn't go over very well, especially with the district court at sentencing. That way. Anyway, you want to reserve the rest of your time for rebuttal? I assume my light has gone on. I'll reserve the rest of my time. Okay, very well. Mr. Fulton, good morning. Good morning. May it please the court. The district court committed no error in assigning this enhancement to Mr. Robinson. The record was, it amply supported his conclusion that he possessed that firearm on December 12th in connection with the planned sale of cocaine. Turned out to be, they had planned to be selling to an undercover operative, and so they got arrested. But the district court did not rely excessively or in any out of the normal way on the text messages. The record included the text messages. It included the testimony of the officers. And it also included Mr. Robinson's statement, a posterized statement, that he had specifically picked up the gun on his way to pick up Mr. Solorzano to take him to the drug deal. So the evidence amply supports this, the finding that the enhancement applies. And as for the legality of using the acquitted conduct at sentencing, this court has recently, as last year in McClinton, said that it was lawful, that this court is bound by the Supreme Court precedent on the issue. And until the Supreme Court says otherwise, it's, the district court committed no error. So we ask that you affirm Mr. Robinson's sentence. On the, I want to make sure I got the, on the Solorzano, I don't know if I'm saying his name right, that was the fellow that he accompanied to the, what they believed was going to be a drug deal. And the, is it the, was it the officer's slash agent's testimony that contextualized the meaning of the text messages for purposes of establishing that these guys were going to a drug deal? Yeah, yes, and the text messages were pretty explicit too. They had, it was. This is a business, but I'm going to drop off some cars or. Yeah, I think they were talking about the 23, referring to 23 ounces, that there had been some leftover from the three kilogram total that they, that Solorzano brought up, that one of the kilos had been broken up into smaller quantities. And that this December 12th deal was to be for the remainder of one of the broken up kilos. But I think there was also some interpretation. I don't recall exactly now. But there did, there just seems to be a, seems to have been no dispute that this was actually a drug deal. And that Robinson had brought the gun for that purpose. Okay, very well, thank you. Thank you. Mr. Frelick, you're welcome to use your remaining time. Thank you, Your Honor. I just want to make one brief point. And I do appreciate that the court has considered the legality of acquitted conduct in sentencing. And it has done so relatively recently. But I think the volume of litigants challenging this practice is primarily a function of the fact that the Supreme Court's own precedents in this area have evolved with some frequency since 2000. And this court has, even if it has ultimately never adopted Mr. Robinson's position, each time there's been a major precedent on that issue, it's at least felt worthy to reexamine whether the practice can be squared with those precedents. So we would merely ask that it do so in light of the most recent one in Haymond. If the panel has no further questions, I'll just save the rest of my time. Thank you. Very well. Thanks to you, Mr. Frelick. Thank you for accepting the appointment. Thanks to your law firm. You've represented your client well. Thanks to the government, too. And we'll take the appeal under advisement.